Morning, Your Honors. If it pleases the Court, my name is Patricia Berry, and I'll be arguing on behalf of the Appellants Cohn and Filia Kourtis. I'd like to discuss the privity, if it's all right with Your Honors, because I think that's the most important point. In fact, as Judge Barron said at page 7 of his opinion, found at my excerpts of record at page 42, he said clival estoppel is appropriate if the parties are found in privity. Now, what's interesting in this case is that in the prior Greene litigation, Judge Barron referred to Cohn-Kourtis as being the agent of Mr. Greene, but he said in our particular case that he will agree with the Kourtises that Greene was their agent, not their principal. Now, there is nothing in this record, nothing in the complaint, that could ever indicate that the Kourtises ever authorized this litigation. And in fact, as I cited at page 7 of my reply brief, Wicken indicates that if the agent acts beyond his authority and the conduct of the principal is such that it is clear that he did not or she did not give any kind of authority, even ostensible authority for the agent to proceed, the principal is not bound by that agent's action. Now, the defendant supplied an excerpt of record, I think it's at page 70 of Volume I, where Mr. Kourtis, my client, went out of his way to publish in the Pasadena newspaper that he never gave authority to Mr. Greene to bring this action. Now, what is interesting about this case is that I argued in my opposition papers below and in my papers here that the defendants who are now arguing with great vehemence, because they're hoping that you'll affirm on this grounds of privity, they argued, hey, Judge Byrne, you got the wrong guy. In fact, that was one of their leading arguments in their motion for summary judgment. It was argument number three in the Greene case. So that Judge Byrne knew, even by the defendants, that there was somebody out there who had a claim to the copyright. Now, the rebuttal of Greene in the Greene case was, yes, the Kourtises did own the copyright, but they assigned the copyright to me. The defendants, who are now going to argue privity to you in a few minutes, said, oh, wait a minute. They didn't get proper consideration. Now, what does that mean? Well, if you go to 17 U.S.C. 501B, you have at least a beneficial owner who's out there. And I said, without citing 17 U.S.C. 501B, look, Your Honor, defendants had an opportunity under Rule 19 of the Federal Rules of Civil Procedure, Rule 19A, to join them either as involuntary plaintiffs or as defendants, even though they were arguing, wait a minute, the Kourtises are the true owners of the copyright. You really got the wrong guy. Summary judgment should be granted on this. They didn't take advantage of Rule 19 and join the Kourtises to the action, as I say, as involuntary plaintiffs. Now, remember. Now, you say Greene asserted before that Court that he had the copyright. Then you infer there's an assignment. Was there indeed an assignment or not? Well, that's what Greene claims. So what happened? What does the record tell us? Was there an assignment or not? Well, apparently, there was evidence submitted in the Greene case that there was an assignment because there's a reference somewhere to the record. I didn't get it because I didn't think it was that important to the arguments I'm making now on privity. What's important, what Judge Verne did, he said, well, look, the issue of privity or, excuse me, the issue of the, whatever you want to call it, beneficial ownership or whether Kourtises were the true owners of the copyright would be an issue for the copyright issue. But lookit. I've already thrown that out. And I don't think I have to reach the issue of who really owns the copyright because I'm deciding the State law claims.  The problem is there's certainly a parallel interest here. And on the merits of the issue, it was absolutely identical. The real question is whether there was true privity. Right. And if there was a conflict between the interests of the two parties, I think you could persuade me there was no privity. But if, in fact, their interests are identical because, indeed, there was an assignment, there goes your privity argument. Well, Your Honor, except that in order to establish privity, there has to be demonstrated somewhere along the line that the Kourtises had control over this litigation. And as the Court, as this Court noted, control, why couldn't they just be passively aware of it and not complaining? Be passively aware of it? But they weren't passively. They were actively aware of it. And trying to get their lawyer to get them into court, and he was ignoring them, sending them clear back to Australia on the copyright issue. But the point is, is that he, Mr. Curtis, actively took out that ad and said, we don't have anything to do with this litigation. We know that we didn't authorize them. But here's what's really important, is that the defendants now in this case want to lay the blame totally at the Kourtises' feet. Nimmer, as cited in their unreported case that I complained about because it was unreported, but anyway, Nimmer says that, look, the whole goal of 17 U.S.C. 501B is to make sure that anybody who could possibly have an interest in the copyright action be joined to that action. Judge Byrne was put on notice, and I must say, he was a great judge. I enjoyed appearing before him. He was testing my mettle, which was fun. It was like the old days in Washington, D.C., where there's no tentative and so on. But I think that because it is copyright and because there's special proceedings and because of 501B, the Court had an obligation and, in fact, could have ordered the defendants to join the plaintiffs, my plaintiffs, my clients, at the first action. And for some reason, I don't know why, he didn't want to address this. But did Green have his own copyright in the derivative work of this Green play? Not that I'm aware of. Not from this record, Your Honor. I think what the judge said is and what they argued, what the defendants argued, is that there was a work-for-hire. And my understanding from the prior record is what came out was because in the opinion of Judge Byrne in the Green case now, he says, yes, Mr. Green admits that they originally owned the copyright, but that they assigned it to him, and then the defendants came back and said, yes, but there was no consideration given. Therefore, you should cancel that assignment. Now, whatever we want to say about that assignment or non-assignment, we know the judge knew, the defendants certainly knew, they took the deposition of Felia Curtis, and Mr. Green knew that the Curtis's were out there. And there's nothing in the Green record to show that Mr. Green complied with 17 U.S.C. 501B, notifying the Curtis's that he was bringing this action. Did the Curtis's have actual notice? When you say actual notice, you mean where they served with the lawsuit, Your Honor?  Were they aware of the fact? Oh, yes, definitely. They were aware of the lawsuit. Did they seek to intervene? No, because, again, that was Mr. Lambros. He did not intervene. But, again, I think this was a three-part responsibility, and I rely on Rule 19. If you know somebody is out there and you already know that the plaintiff in this I just, it's incomprehensible to me at least, the way I would have done it, is say to His Honor, look, we've got to join, we've got to bring in the Curtis's, either join them as involuntary plaintiffs or join them as defendants under Rule 19, and we, you know, we don't want to get stuck with what we've got now. But I think it's Don't the Curtis's have some duty in that situation also? Because there is a single cause of action here. The cause of action cannot be split. The Curtis's were deposed, or one of them was deposed in this very proceeding. They knew what was going on. They knew that there was not a green cause of action and a Curtis cause of action. And they knew the case was going to be litigated and decided. Don't they have some duty to they were involved here so closely, they're almost parties. Why didn't they intervene? Do they not have a duty? Why should the duty fall entirely on the judge? If I could respond, Judge Lovell. The duty does not fall entirely on the judge. I see it as a three-way process. The duty of the judge to do something, the duty of the defendants to do something, and certainly the duty of the Curtis's to do something. So I pled in my complaint that the long delay in bringing their cause of action was because of the malpractice of Mr. Lombros. Either he was intimidated by taking on the big boys in Hollywood, which is always a consideration for a solo practitioner. Judge Hupp, that esteemed jurist, said that I'm not afraid to do a jury trial. I'm not afraid. But, I mean, that probably may have been a primary motivation on the part of Lombros. I can't read his mind. All I know is what I pled in the complaint, what I learned from my clients, Judge Lovell. Counsel, this thing that troubles me is obviously you have some green documents. In any properly pled copyright complaint, you need to put in the attached to the complaint the evidence of copyright ownership, right? Oh, then, okay. Isn't there a special role on that? I thought that all I had to do was plead that they had to do that. I'm not talking about yours. I'm talking about the green. Oh, the green case. I'm still looking to see whether green showed any evidence that he actually owned the copyright, because the grounds for the summary judgment that was put before us was basically that there was no substantial similarity, which is an entirely different issue. I don't see how that is so helpful. It's — Judge Wardlaw, what happened at that particular part of the opinion was that Judge Bering refused to reach the issue of whether — who owned the copyright, and apparently that in that record, in that — I know it's very — Judge Bering called Cone Curtis the agent in the first one, but he says, okay, for you guys — or for you, the Curtis' — I'll call Mr. Green your agent, which makes it a much more serious relationship and gives my clients more authority, because they're the principals. They should be running the show. And as your — but back to your question, there was never — the court never reached the issue of who owned what on the copyright. So it doesn't count. In the documents, there should be — or, I mean, if it were properly plated, there should be evidence of ownership in the — attached to the complaint. Okay. But going beyond that, it seems to me what you have here, if you have a work-for-hire, then the Curtis' owned the copyright as to the screenplay. That's what Mr. Green conceded, according to Judge Byrne, in the Green decision, that he admitted, yes, the Curtis' owned the copyright, but they assigned it to me. Here is the assignment. The defendants rebutted by saying that they never got the consideration, so the assignment doesn't count, and the — and so we're back to square one, which is that the Curtis' — You just decided a case en banc on that issue, whether or not you can do that. I'm sorry, Your Honor? I don't know if it's been published. And I may have missed that. I was trying to research yesterday on — and I may have missed that case. But here's the point. Who owned what is one issue. But what's important is privity. Had privity ceased at the time that Green filed the lawsuit? There's nothing but evidence here of a very hostile relationship. And as your — as this Court ruled — and I had the — oh, yes. The Nord — actually, it was a case cited by the defendants. The Nordhorn v. Laddish case, 9F3rd, 1402. I argued at my reply brief, page 11, that really supports our position, because what the Ninth Circuit says is for privity, that privity had to have existed at the time they filed the lawsuit. And they said — in the Nordhorn case, they said the relationship that did exist, that was long gone. And I think it could be said here that whatever the record shows, the principle agent relationship, as Judge Byrne was willing to call our relationship in our case, but he called it the agent-principle relationship in the Green case, that was long gone at the time Green filed the action. And so what you have are, from our point of view, taking the facts favorable to our position as pled in the complaint, were this couple, this Greek couple who had migrated to Australia, saying, oh, my goodness, Terminator 2 stole our intellectual property, we've got to do something about it. Now, I'm not asking this Court to say that because malpractice was committed, somehow my clients get an extra step. I'm just saying they get to re-litigate the question of the substantial similarity based on the work that they — their original work as well as the derivative work if they own the copyright to it. That's correct, Your Honor. And even Judge Byrne, he spent two pages, in his opinion, putting us out of court talking about the similarity. But then he said, look, I can only grant this motion to dismiss on soire le sapel if I find privity. And what's kind of interesting is that the appellant kind of poo-pooed when I said, well, yeah, they have a common goal. They want to win. They want to get credits. And they want money from the defendants. But then that's true of all plaintiffs in the world. They want to win. Sometimes they want injunctive relief. And they certainly want to defeat the defendants. But there has to be — Well, we contend in our complaint that there was. Now, this was kind of like a gotcha situation. I wanted to be respectful of Judge Byrne. I've been 30 years in the business. I did not want to step into an MSJ without full discovery, the chance to put on our experts for another day, another time. So I said to him — he said, well, you didn't bring this. You didn't bring this. And I said, no, Your Honor, but once an MSJ is filed — and, of course, he joked, and he said, you can bet your bottom dollar an MSJ is going to be filed in this case. And I said, I want to put on my experts. So he ordered me, you know, to produce the material that we cited in the chart that was attached to our complaint. So I produced that because Judge Byrne ordered it. I mean, I'm not going to defy a judicial order, but I never — because of what I had said in the colloquy with him, I never understood him returning it into an MSJ. Now, the defendant said, well, you could have done discovery. I say no. These defendants are adamant. They're going to get up here and tell you privity's there. You should affirm the order of dismissal based on collateral estoppel, that there was privity, privity, privity. There is no way. And I've been 30 years in the business, 28 years at that time, that I ever believed that I could obtain discovery from these defendants. Plus, we all agreed we need to wait and see what Judge Byrne would do. And for some reason, I'll never understand it, he waited eight months and then we had to do that local rule asking him to make the decision. So you're down to about two and a half minutes. You may reserve or continue to use. I'll save two and a half minutes. Thank you very much. Thank you. Good morning. May it please the Court, Marissa Westervelt, on behalf of International Creative Management, Jeffrey Berg and Joseph Rosenberg. I see two other names on the docket. Will they be participating in the oral argument? Yes. Mr. Shepard is here on behalf of Defendant James Cameron and Mr. Horowitz is here on behalf of Defendant Mario Casar. What we would like to do with the Court's permission is to have me make the primary argument on behalf of all defendants. And then if Mr. Shepard or Mr. Horowitz have any points that they would like to add or clarify, that they be allowed to address the Court on those points. Okay. Your entire side is 20 minutes, just so everyone understands that. Yes. All right, very good. Thank you. You may proceed. All right. This is a case where there are a lot of grounds for affirming the district court's decision. And obviously collateral estoppel is one of those grounds that we want to address. But before I get to that point, I would like to just talk about a couple of other grounds that apply to both the copyright claim and the state law claim. Well, don't ignore the privity issue, because that's pretty important. In fact, let me just ask you, under Headwaters, you can have a similarity of interests, but you have to have adequate representation. And I think it's pretty clear that the interests are quite similar here. But what about the adequacy of representation, particularly based on what we heard, in that the courtesans simply did not wish to be bound from the very beginning? Well, the issue that we're talking about here for a pursuit of collateral estoppel is the substantial similarity between the Minotaur and the Terminator. And in terms of the ---- No, but before we get to that, we have to have the privity. The privity, yes. I'm sorry. I was getting to that, Your Honor. What I wanted to just say is that looking at the representation and the adequacy of representation on that issue, I think that it's clear that Green did a very thorough job of litigating that issue on behalf of himself and whoever else might have an interest in that issue. He was represented by counsel. He brought in experts. We understand all of that. That's Green. The question is, to what extent are the courtesans bound by what Green did in that case? And I would say that the courtesans were fully aware of Green's action. They admit that. They actually took part in that litigation. And I think that the fact that they ---- They took part in the litigation. What? Their depositions were taken. Well, Mrs. Curtis's deposition was taken, yes. All right. But she was never a party. No, she was never made a party to the deposition. Why would they? I mean, your side makes a big deal out of the fact that they didn't intervene. Well, assuming they knew that Green had no copyright interest in this work, what difference does it make? I realize I'm giving a defense to the lawyer that the courtesans are suing for malpractice. But if the courtesans held the copyright, had evidence of the copyright, and knew Green didn't have ownership in the work at issue, then his case, it should have been dismissed on ownership. It should never have even gotten to substantial similarity. So I don't understand why the courtesans should be required to intervene at all. Well, I don't think that the ownership question came before the court, because I don't think until that came up. What happened was there were two decisions in Green. There was a 1994 summary judgment on the copyright claim, in which it was found that there was no substantial similarity. And then there was a second action in which the state law claims were dismissed. And ---- I think we know about that. Okay. Please try to respond directly to Judge Wardlaw's question. Right. Because a lot of us are concerned about this issue. I understand. What I was trying to say was that the issue of copyright ownership wasn't the thrust of the Green litigation. It was asserted as a defense. Does that matter when you're talking about the privity issue? I mean, if the courtesans weren't involved and had a sound basis for not being involved, what difference does it make which of the several issues in the copyright litigation was the thrust or where he ruled? You know, he went to substantial similarity. I probably would have started with ownership. But what difference does that make on the privity question? I don't think it makes a whole lot of difference because I don't think that what we're arguing here is that actually has to go to the issue of copyright ownership. I think that the real question is whether they had the same interest in litigating the substantial similarity issue. And I don't think the ownership changes that. Green was actually acting adverse to the courtesans, wasn't he? He was trying to assert ownership and get damages for a copyright that he probably didn't own. Well, he was acting – he was trying to attain a judgment that the copyright was infringed. But so were the courtesans if they had done that in their place. And, in fact, if Green had prevailed – You want someone who was defrauding you and claiming ownership of your work, representing you in the litigation over whether the work was infringed by a third party? I personally know, but I don't think that's what was going on. I don't think that – there's no evidence that Green brought his case in bad favor, that he really didn't think that he owned the copyright. I mean, he had reason to believe that he didn't. And – What was the record evidence about ownership? Was there indeed a written assignment placed in evidence in that case signed by the courtesans? I don't remember. I know there was an assignment. What happened was is that the courtesans at some point had transferred their rights to a Minotaur film production company, and then later on there was an assignment from that company, which I believe was written, but I'd have to check, to Green. And that's – Assignment of what? Excuse me? Assignment of what? I mean, excuse me, the Minotaur script. So that's not the original work in which the courtesans own the copyright? I'm not sure that they actually do own any protectable right in the original work. But, no, it's not the Minotaur treatment. I think it was just the Minotaur script. But that was based in the Minotaur treatment. Doesn't the current Copyright Act give ownership to someone even who doesn't register it? I mean, that registration is just a condition to suing, but once you've produced a work of art under the 1978 Act, you own it whether or not you've filed to register it with the U.S. Copyright Office. I would say that that's correct. I'm not 100 percent sure about that, but, you know, I would defer to your observation, yes. But, again, I don't really think that the copyright ownership is that relevant. I mean, plaintiffs have made a lot of hay out of this issue because they're trying to show that there isn't any privity. But ---- Well, that's the issue that's going to decide this case. Yes. I agree. It's a very important issue. But I don't think that ---- well, I think the copyright ownership issue kind of gets ---- kind of takes us a little bit to the side. I think that we have to look at the interest that both the courtesans and Mr. Green had in litigating the issue of substantial similarity. See, that's what I don't understand. Why do we look at just that issue? I mean, simply because the judge ruled on that issue. Why are we only to look at that issue? I mean, there's a lot of other issues that go into adequacy of representation. Well, that's the ---- I'm focusing on that issue because that's the grounds on which we assert collateral estoppel. But ---- You've got a very, very good claim on collateral estoppel if you can establish privity. That's what we're struggling with here. Are these the same transactional nucleus, both claims? The Headwaters case says must be the same transactional nucleus. What is the transactional nucleus in the Green case? Isn't Green saying, I own the copyright and it was stolen by Schwarzenegger's people? And isn't that the same claim that is being advanced by Cordes? And isn't the claim identical as to the transactional nucleus? I would say that it is identical to the transactional nucleus insofar as both Green and the Curtis's are asserting that there was infringement of the copyright. As to the actual ownership of the copyright, there's a difference between what Green said and what the Curtis's said. But again ---- Isn't that irrelevant who owned it? You have a single cause of action. I think, or maybe you don't agree, it seems to me you have to regard this as an entity, as a race, as a cause of action. It can't be split. And if that is true and correct, doesn't it follow that in examining the privity question, we have to look at the adequacy of representation and determine whether or not Curtis's had some duty to come forward and intervene? Or if the duty is on the court to join a necessary party or an indispensable party or to do something further. I think that's necessary to get to the privity question, isn't it? Why don't you answer that question from Judge Lovell, and then I believe Mr. Shepard probably wants to share some time. Well, I think that the question of access to the courts is obviously very important for applying claro-staple and privity. But again, I think that ---- Well, actually, I'm sorry. If you could just restate your question. I think I might have lost track of the main thrust of it. Are you asking about whether or not we had to say that or why the copyright ownership is not implied in the issue of whether or not they had a full and fair opportunity to allegate the issue? What I want to know is if the thrust of both suits isn't the same and doesn't arise out of the same transactional nucleus. Both claims are that there was a stolen copyright right. Curtis is here, as I understand it, had written a 25-page thesis which is not copyrighted. They'd hired Green to write the script. The script was copyrighted. Green claimed to own it and claimed that Schwarzenegger people stole it. Now, isn't that the very same claim that Curtis is now advancing? And if so, then the question of privity comes up. And that's what Mr. Shepard is anxious to talk about. Yes. Thank you, counsel. Mr. Shepard. It's very difficult for a lawyer to sit back, even though we've divided up and allowed Mr. Bell to take the first crack at it. Obviously, the Court is concerned about privity as it relates to the collateral estoppel issue. Was there a duty to intervene here or not? I don't believe that there is an absolute duty to intervene, Your Honor. But in answering the question of privity, I think you have to look at what the Curtises were doing and by sitting idly by and not intervening. But similarly, isn't there a duty by Green to join the copyright owner? Well, Green, I think, believed he was the copyright owner. He believed he had the ownership interest in the copyright. But we're talking about the law here. And so it's been declared now that, in fact, the Curtises have the copyright, right, in Australia? Well, they've produced a consent judgment, which we don't know what the background of that is, whether that was by way of stipulation or whether a court determined that. This goes to the adequacy of representation. The Curtises have no duty to intervene. However, Green has a duty to join the true copyright owner if that is the true set of facts at the time. I think that's correct, although I believe Green believed that he was the true copyright owner. With the Court's permission, I'd like to address the issue of privity and what the Curtises were doing or not doing, because what the Curtises did by being aware of the lawsuit, and it's undisputed that they were aware of the lawsuit, and it's undisputed that they knew who was representing the Greens, but they did nothing. What happened was the Curtises, at least they concede in their own reply brief, claimed that Green was their agent. Their agent filed a lawsuit asserting copyright infringement. The Curtises, knowing that their agent filed a lawsuit for copyright infringement, allowed that copyright action to proceed without intervening. I'm not suggesting that they had an obligation to intervene, but they didn't intervene. And the reason I would submit they didn't intervene, and this is going to come back to the issue of privity, the reason they didn't intervene is that if Mr. Green was successful in his lawsuit, they would have made a claim for that money against Mr. Green. And I would submit to the Court that there, while they have no duty to do that.     And I would not make that argument. The case is not a case of privacy with Mr. Green. We're talking about privity as the Headwaters case talks about it. Focus on the adequacy of representation issue. That's really troubling me here, because I – it seems to me that even at that time when their interests were not in sync, in fact, were reversed. Well, their interests were certainly in sync as it related to the defendants. Their interests were congruent with the Green's. Okay. I agree with you with respect to the merits of the controversy, but the question is with respect to whether or not the Green case can bind the Curtis's, we have to deal with Headwaters, which says there has to be adequacy of representation. And that's the issue that they're making a very strong argument about, it seems to me. Well, and what – I'm not sure in what sense the Court is concerned about the adequacy of the representation, the quality of the representation that's being presented. The Headwaters case says. The – Your Honors, all I can say with respect to that issue is that the Curtis's knew that a lawsuit was being brought. They knew in that lawsuit a claim was asserted that their copyrighted materials had been infringed. And with their copyright, with that common interest that they had with the – with the Greens, they stood idly by and let the lawsuit go forward. So it's sort of a consent theory then? Well, I think it's relevant, Your Honor, because what – there are cases that speak in terms of privity as to whether or not Plaintiff No. 1 is a virtual representative of Plaintiff No. 2. That's the way – Right. And Headwaters kind of put an end to that because – and probably rightly so. I mean, in general, you wouldn't want a broad interpretation of who was in privity for purposes of clerical estoppel. But we have – we have cases such as Trevino and Shaw where different parties are asserting claims against a defendant, and even though the party who subsequently seeks to re-litigate that, which was already litigated, did not necessarily have completely the same interests as the party who initially brought the lawsuit, collateral estoppel nevertheless is applied. Are you saying that because the Curtis's were so closely involved in the first case, in the Green case, that they ought not now be heard to say that the representation there was not adequate? I would agree with that, Your Honor. I think in deciding the issue of privity, you have to look at the totality of the circumstances of this case, and the totality of the circumstances are my agent files a lawsuit. That's what the Curtis's claims since they say Green was his lawsuit. I know about that lawsuit. I have a right to intervene if I wish to do so. Not a duty, but a right to intervene. I'm going to choose not to intervene, and I would submit to the Court that the reason they chose not to intervene was because they were going to see what happens. If the Greens prevailed, if the Greens could establish that there was infringement, that there was substantial similarity, if the Greens got a $10 million judgment, hypothetically, the Curtis's would certainly thereafter, and they would be totally free to do it, to fight with the Greens over who was going to be entitled to that $10 million which the Greens got in this theoretical. Let me just – I'm sorry. I'm going to interrupt, but you've already made that argument twice, and you're speculating as to the Curtis's motivation, and that's not anywhere in the record. But I just – what's – I don't know what to do with this, but Headwaters, which it was a more stringent test for privity, was issued in 2005, and Judge Byrne's decision was issued in 2003. So he really didn't even have the benefit of applying Headwaters to the case here. Is that a possible reason to remand, since he was applying the sort of virtual representation theories? I don't know that he was necessarily applying virtual representation, and to be honest with the Court, I'm not familiar with the nuances of Headwaters, since nobody cited it in any of the – in any of the briefs that we filed. I don't believe so. Really? I thought that was the case. Maybe not. Maybe I'm mistaken on that. But our briefs were filed in 2004, I believe. That's what happens when you have really great law clerks. They find all this research. So I'll candidly admit to the Court that I'm somewhat at a disadvantage, and since nobody briefed that case in the various papers that we filed, nobody asked the Court to take supplemental – look at supplemental cases. So we're at somewhat of a disadvantage, and I apologize to the Court. But the point I'm trying to make on the issue of privity, and I know your four lows indicated I've made the argument twice, and I'll try not to make it a third time. But what – as to the issue of privity, what is a little frustrating and seems a little unfair when you – and I think it's relevant to decide whether privity applies in this particular case – is that if the Greens had prevailed in their lawsuit and had they got a judgment, I don't think the Curtises could thereafter have filed the same judgment, the same lawsuit against the – against the defendants saying, hey, you just lost – the Greens just sued you for copyright infringement. In effect, what you're saying, which certainly is very plausible, that they're stopped from denying them. So I think that's probably a more concise way, and I guess I'm struggling to get there. But, yes, it's – without knowing the nuances of Headwaters, for which I apologize, the issue of privity is you have to look at the confluence of events here. You've got principal and agent relationship. That's undisputed. You have a new plaintiff who was clearly aware of case number one and stood by idly without intervening, not required to, but they could have. They chose not to. And I would submit that had they intervened – or, excuse me, the reason they didn't do so is because they wanted to buy the apple. And the purpose of collateral estoppel is to avoid inconsistent judgments, is to make sure that people don't get sued twice for the same thing, and to avoid vexatious litigation. That's – those are the three primary criteria for collateral estoppel, and all three of those apply here. If the greens are allowed – the courtesans are allowed to get away with what they get away with here. Assuming there's privity. Assuming there's privity. But it's – Is there a different work at issue between the Green case and this case? Yes and no, Your Honor. Because you have the original treatment, which is at issue in this case, but you have the derivative work, which was at issue in the Green case. That's correct. And, Your Honor, I asked Ms. Berry whether there was anything new in the treatment that was not in the subsequent script. And Judge Byrne had a – Vice versa. But there was anything in the – is there anything in the treatment that did not make its way into the – into the – into the script, which was at issue in Green? Treatment comes first. And then the script is based on the treatment. Green sues on the script. Judge Byrne asked that question of Ms. Berry as well. Her – and she submitted a chart with her complaint, which purported to describe what is contained in the treatment, what is contained in the script. In Judge Byrne's decision, he concluded, I believe rightfully, that there's nothing in the treatment that did not find its way in the script that is relevant to the infringement claim. And I noticed that in Ms. Berry's response to your question, Judge Wardlow, as to is there anything different, is there anything new, she didn't identify anything specifically. She didn't say to you, for example, there's this particular scene in the treatment which was not in the script, which nevertheless was in T2. So Judge Byrne concluded that there was no difference, and I think that's probably accurate on this. Thank you, counsel. Your time has expired. Ms. Berry, I think the issue has been focused. Where do we go from here? Well, I wanted to kind of like go in a circle. I think we're all dancing around it, because after – oh, do you want your book? Okay. We can't forget that everybody was talking about the courtesies and the first action. Now, what is interesting is that – Let me be very specific. Sure. What's your response on the idea of either consent or estoppel? Certainly the courtesies knew about it. They participated to the extent of being a witness and deposition. Right. Isn't that enough? Well, as Judge Wardlaw said, that even though we have pled that they were begging Lambros, get into court, what do we do? And he sends him to Australia to resolve the copyright issue or the copyright ownership issue between him and Green. They weren't standing idly by. They were acting, doing everything. They were going to Austria to get an expert, because Lambros sent them there. They went back to Australia to litigate that. Okay. Very quickly. But as Judge Wardlaw says, if there's an antagonistic relationship, which, by the way, was never, ever decided in the Green case, and as Judge Lovell has pointed out, it's one cause of action. It's called federal copyright infringement. And as Judge Burns says, look, I agree that ownership of a valid copyright is a prerequisite to the prosecution of an action for copyright infringement. But plaintiff's copyright infringement, meaning Plaintiff Green, was dismissed in July of 1994. Therefore, I refuse to reach the issue. He dismissed it for whatever reasons, and apparently nobody raised that issue, and he says, I'm not going to reach it now. Then he says, in our case, well, I'll concede that you are the owners. Well, if you are the owners of the entire Minotaur Works, as decided by the consent decree in Australia, then the first cause of action, based on Judge Lovell's rightful reasoning, you got one cause of action. Judge, everybody here is in agreement that for a copyright infringement, you've got to have ownership, and Judge Burns conceded for our purposes, motion to dismiss, we are the rightful owners. The Australian judgment supports us in that. Then we could argue also that not only was there no privity, it was a fraud on the court, or it was a dishonest lawsuit because Green lacked the essential element in order to even reach the issue of similarity on the copyright, Federal copyright infringement. And I might add that the defendants in putting in their unpublished decision, the court in that case repeatedly stated, I cannot believe what the plaintiffs did to me in this case. I cannot believe that up to the pretrial conference order, they knowingly and falsely argued to me that they were the sole owners of the copyright when they knew there were beneficial owners out there. Now, I believe that that judge, I'm not arguing that that's precedent because it's unpublished, but I think the concern of the court about the gamesmanship that was dishonest, we have to have lawyers who are straightforward, we're wordsmiths, and while I believe in creativity, we've got to mean what we say, we have to say what we mean. And when Judge Byrne said, I'm not going to reach this issue of who owns what, and then says we are the rightful owners, it seems to me that we not only do not have privity, we didn't even have a righteous cause of action for trademark infringement in the first case, and therefore, in a sense, it's void. And I think, again, returning to this unpublished decision, and what the judge was saying there has great applicability to this case, that something should have been done. Yes, Lombrils was playing a game with my clients. I can't read his mind, but my clients were not standing idly by. They were heartbroken at what had been done to them. Now, whether there's similarity or not, I ask the chance for a reversal. It's another day. It's another try. It's other experts. And I don't want to get into a deconstruction derrida argument, but I think that how we tell the story once more to Judge Byrne or whoever hears the case may look at the facts differently, particularly because we have the Cameron connection. Thank you, counsel. Thank you very much, Your Honor. The time has expired. The case just argued will be submitted for decision. And we will hear argument in Weinstein v. Gill. Thank you.
judges: O'scannlain, Wardlaw. Lovell